18h 473<br>L-ed 457<br>18wo267

AMARON LEDOUX, ALPHONSE MILTENBERGER, AND GEORGE O. HALL, PLAINTIFFS IN ERROR, *v.* JOHN BLACK, JOHN HAGAN, JR., JOHN HAGAN, SR., FRANCIS WREN, J. M. SMILEY, AND EPHRAIM McLEAN

In the case of an imperfect Spanish title to land in Louisiana, a confirmation by congress is inoperative, unless the title or survey under it will enable the court to ascertain the specific boundaries of the land.

If, before a survey, in such a case, an entry is made and a patent taken out for land, which conflicts with a subsequent survey of the confirmed concession, the patentee has the better title.

·· THIS case was brought up from the supreme court of Louisiana ·by a ·writ of error, issued under the 25th section of the ·judiciary act.

˙ The case is stated in the opinion of the court.

It was argued by *Mr. Carlisle* and *Mr. Badger,* for the plaintiffs in error, and by *Mr. Benjamin,* for the defendants.

Mr. Justice CATRON delivered the opinion of the court.

˙ This cause is brought here from the supreme court of Louisiana, by writ of error, under the 25th section of the judiciary act of 1789. The only question presented for our consideration is, which party has the better right to the land in dispute? The defendant, Black, claims title under an entry made in 1808, and a patent founded on the entry, dated in 1810, in the name of. ;General Lafayette, for a thousand, acres. The validity of this title as against the United States is not denied; but the plaintiffs claim to have an elder title, by virtue of a concession to Ursino Bouligny, of forty arpens front by forty arpens in depth,. dated January 10, 1796, of which the plaintiffs are assignees. They allege that under an act of congress of February, 1813, Bouligny prosecuted his claim to the proper register and receiver, who reported in its favor on the 20th of November, 1816; that their report was confirmed by act of congress, the 11th of May, 1820, and that claim was regularly surveyed by order of the surveyor-general of Louisiana, in 1843, and the survey approved in 1844.

To show the point made and decided on these facts, by the supreme court of Louisiana, we give an extract of their opinion, which is found in the record :—

. "Conceding," (says the court,) "for the sake of argument, that the claim of the plaintiffs was filed in the land-office in the manner required by law, before the issuing of the patent to General Lafayette; that it has been confirmed by the act of congress of the 11th of May, 1820, and that the confirmation should be made to refer back to the date of the original title, unless that title or a survey made under it by the Spanish surveyor, in compliance with the order of the governor, will enable the court to ascertain the specific boundaries of the land granted, the location of the warrant under which the patent issued to 'General Lafayette cannot be disturbed. We have uniformly. adhered to the rule laid down by our predecessors in the cases of Lefebvre *v.* Cameau, 11 L. R. 323; Slack *v.* Orillon, 11 L. R. 587; Lott et al. *v.* Prudhomme et al. 3 R. R. 293; Metoyer *v.* Larenaudière, 6 R. R. 139.

-" In the case of Lott, the court say, referring to the other two;

' We then held, that when the boundaries of a confirmed claim are vague and uncertain, and are to be fixed by the operations of the surveying department, or such confirmation is' only the recognition of a preëxisting right or claim, and before the survey and location the government sells a part of the land not necessarily embraced within the tract confirmed, the title of the purchaser will prevail.' Let us test the title of the plaintiffs by that rule, and ascertain whether the land now claimed is necessarily embraced within the tract confirmed to them, supposing that such a confirmation had taken place.

" There was no survey under the Spanish government, and no possession by the grantee. The boundaries are to be ascertained exclusively by the calls of the *requête*, and of the order of the governor upon it. Both describe the land as a tract of forty arpens front by forty deep, in the district of Point Coupée, *en el parage*, called the Lagoon of the Raccourci. It is not stated whether the land is to front upon the Lagoon, or upon the Mississippi River; and as one location would answer the calls as well as the other, the description is, perhaps, on that ground alone defective. Lafayette *v.* Blanc, 3 Annual R. 59.

" But supposing that the front was intended to be upon the river, where is it to begin, how is it to run, and where is it to end ? Whether the words of description used mean at the place called the Lagoon, or in the vicinity of the Lagoon, the starting-point of the survey is alike uncertain, and the designation of it by the surveyor who located the grant purely arbitrary, so far at least as it affects the rights of the defendants.".

Until the confirmation took place, (supposing the act of 1820 did confirm Bouligny's claim,) no valid title as against the United States was vested in the grantee to any specific tract of land. We need only to refer to the case of De Vilemont *v.* The United States, 13 How. 266, for authority to this effect. The cases are alike in all their features.

Nor did the mere act of confirmation tend to locate the claim, and sever the land from the public domain; this could only be done by a public survey, and which was not done till 1844. Up to that date the government could sell and convey a legal title to General Lafayette, regardless of the fact that Bouligny's concession existed, and might be surveyed on the land previously granted. This question was settled by the decision in the case of Menard's Heirs *v.* Massey, 8 How. 301, and is not now open to controversy.

We order that the judgment of the supreme court of Louisiana be affirmed.